**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**
**DOCKET NO. 2:12CV70-RLV**

| | | |
|---|---|---|
| **KAYLA NICOLE BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Memorandum and Order** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

     **THIS CAUSE** is before the Court on Plaintiff, KAYLA NICOLE BROWN's Motion for Summary Judgment and Memorandum in Support of Summary Judgment (Docs. 14, 15) and Defendant, CAROLYN W. COLVIN's Motion for Summary Judgment and Memorandum in Support of Summary Judgment (Docs. 17, 18). For the following reasons, this Court will **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's determination.

## I.     Administrative History

     On March 2, 2009, Plaintiff's mother, Donna Brown, filed for Title XVI Disability Insurance Benefits ("DIB") on behalf of Plaintiff. (Tr. 150–56). Plaintiff's claim was denied initially on July 31, 2009 (Tr. 127), and upon reconsideration on January 26, 2010 (Tr. 136). Plaintiff also filed for Title II Child Disability Benefits ("CDB") on March 16, 2010. (Tr. 163-69). Plaintiff requested a Hearing regarding the DIB denial upon reconsideration. (Tr. 140–42). Both applications for DIB and CDB were consolidated for one Hearing with Administrative Law

Judge ("ALJ") John S. Lamb. (Tr. 89). Plaintiff was not represented by an attorney or a non-attorney representative at the Hearing. (Tr. 35).

After the August 31, 2010 Hearing, both decisions issued from the ALJ were unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. (Tr. 32-50, 21-31, 1-5). Plaintiff's request for review was denied and the Appeals Council affirmed the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 32-50). Thereafter, Plaintiff timely filed this action for a right to review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the discussion which follows.

## III.     Standard of Review

This Court's review is limited to whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*. Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986). The Social Security Act provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit notes that "[s]ubstantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. 389, 401 (1971)).

## IV.     The ALJ Decision

### A.     Process

In obtaining disability benefits, the word "disability" is defined by Social Security Administration regulations as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Since Plaintiff filed the DIB Application prior to Plaintiff's eighteenth birthday, the ALJ was required to assess Plaintiff under a childhood standard of disability as well as the adult standard. 20 C.F.R. § 416.924. This standard is discussed only to provide background for the ALJ's finding that concerned the mental impairment of depression, since depression was not explicitly mentioned in the decisions evaluating Brown's adult disability claim.

#### 1.     Five-Step Evaluation Process for Claimant Eighteen Years Old or Older

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant age eighteen or older is disabled. 20 C.F.R. § 416.920(a). The Commissioner evaluates a disability claim under this adult standard of disability through the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3.      If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4.      If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5.      If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f).  In this case, the Commissioner determined Plaintiff's claim failed

at the fifth step of the sequential evaluation process for both the DIB and CDB applications.  (Tr.

50, 31).

### 2.      Three-Step Evaluation Process for Claimant under Eighteen Years Old

To determine whether a claimant under the age of eighteen is disabled under Title II, the

following three-step analysis is used by the Commissioner:  (1) whether a claimant is engaging

in substantial gainful activity; (2) whether a claimant has a medically determinable "severe"

impairment or a combination of impairments that is "severe";  and (3) whether a claimant has an

impairment or a combination of impairments that meets or medically equals the criteria of a

listing, or that functionally equals the listings.[1]  20 C.F.R. § 416.924(b)-(d).

In determining whether a claimant's impairment functionally equals a listing, a

claimant's functioning is assessed in the following six domains: (i) Acquiring and Using

Information;  (ii) Attending and Completing Tasks;  (iii) Interacting and Relating with Others;

(iv) Moving About and Manipulating Objects;  (v) Caring for Yourself;  and (vi) Health and

---

[1] The ALJ judged Plaintiff's Title XVI claim for CDB on an adult standard of disability since regulations provide for payment of a disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began prior to age twenty-two.  20 C.F.R. § 404.350(a)(5).

4

Physical Well-Being. 20 C.F.R. § 416.926(b)(1)(i)-(vi). For a claimant functionally to equal the listing, the impairment or combination of impairments requires a result of a "marked" limitation in at least two domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.92a(d). In this case, the Commissioner determined Plaintiff's claim failed at the third step of the evaluation process because Plaintiff's impairments did not meet, medically equal, or functionally equal the listings. (Tr. 48).

**B.      The ALJ Findings of Fact and Conclusions of Law**

The DIB Application Decision, under the adult standard, and the CDB Application Decision share the same process of evaluation and the same findings of fact and conclusions of law in this case. In the pursuit of brevity, this Order will reflect that identical nature by discussing the adult standard of disability under only one of Plaintiff's applications, the CDB Application Decision. The childhood standard discussion will be from the DIB Application Decision, the only application concerned with such a standard.

**1.      Disability Insurance Benefits**

Applying the childhood standard of evaluation, the ALJ determined that Plaintiff had not engaged in "substantial gainful activity" since March 2, 2009, the date of the application. (Tr. 40, Finding 2). Furthermore, the ALJ determined that Plaintiff, prior to turning eighteen years old, suffered from the severe impairments of impaired breathing, scoliosis of the thoracolumbar spine, history of one functioning kidney, and Klippel-Feil syndrome. (Tr. 40, Finding 3). However, the ALJ found that these impairments or combination of impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A or B. (Tr. 40, Finding 4) (noting 20 C.F.R §§ 416.920(d), 416.924, 416.925, and 416.926). The ALJ also found that Plaintiff did not functionally equal the listings as allowed by

20 C.F.R. § 416.926a.  (Tr. 40, Finding 5).  This is so because the ALJ found that Plaintiff only had one marked limitation in the six domains, that of Health and Physical Well-Being, and did not have any extreme limitations.  (Tr. 43-48).  Other than the domain of Health and Physical Well-Being, Plaintiff was found to have no limitations.  (Tr. 43-48).

### 2. Childhood Disability Benefits

The ALJ's application of the adult standard for disability started with a finding that Plaintiff had not engaged in "substantial gainful activity" since her date of birth, April 23, 1992. (Tr. 26, Finding 2).  At the next step of sequential review, the ALJ found that the claimant had the severe impairments of impaired breathing, scoliosis of the thoracolumbar spine, history of one functioning kidney, and Klippel-Feil syndrome.  (Tr. 26, Finding 3).  However, the ALJ found that the impairments or combination of impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 27, Finding 4) (noting 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a), but also that Plaintiff can lift or carry a maximum of ten pounds occasionally and five pounds frequently.  (Tr. 27).  This RFC determination is challenged by Plaintiff as not being supported by substantial evidence.  (Doc. 15, p. 1).  Upon determining the RFC, the ALJ found that Plaintiff did not have past relevant work. (Tr. 30, Finding 6).  In the final step, the ALJ found that a significant number of jobs existed that Plaintiff could perform.  (Tr. 30, Finding 10).

## V.    Analysis

### A.    Plaintiff's Three Assignments of Error

Plaintiff has made the following assignments of error:  the ALJ (1) did not fulfill the duty of developing a full and fair record, (2) did not correctly assess the Residual Functioning Capacity ("RFC") by not finding Plaintiff's testimony to be credible regarding neck pain, headaches, and mental impairments, and (3) did not give enough weight to the opinion of Plaintiff's mother concerning Plaintiff's condition.  Determining the RFC at the fourth step of the ALJ's sequential review is the essential focal point of this appeal.  <u>See</u> (Doc. 15, p. 11-16). The assignments of error will be discussed in that order.

#### 1.    The ALJ did fulfill the duty of developing a full and fair record.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."  <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing <u>Walker v. Harris</u>, 642 F.2d 712, 714 (4th Cir. 1981)).  However, "[the ALJ] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."  <u>Bell v. Chater</u>, 57 F.3d 1065 (4th Cir. 1995) (quoting <u>Clark v. Shalala</u>, 28 F.3d 828, 830–31 (8th Cir. 1994));  <u>Smith v. Ast[ru]e</u>, 2:11CV25, 2012 WL 3191072, at *2 (W.D.N.C. Aug. 3, 2012) (adopting the <u>Bell</u> approach).

Plaintiff maintains that the ALJ failed the duty of developing a full and fair record by: (1) not requesting medical records available after March 26, 2010, and (2) not ordering a consultative physical or psychological evaluation to properly determine and assess Plaintiff's limitations after Plaintiff was eighteen years old.

### i.    ALJ Requested Medical Records and Considered Such Records in Decision.

Plaintiff incorrectly asserts that the ALJ never requested records dated subsequent to March 26, 2010.  (Doc. 15, p. 11).  Plaintiff indicated on an undated Recent Medical Treatment Form, supplied by the Social Security Administration, that Carolina Spine & Neurosurgery Center ("CSNC") treated or examined her after March 26, 2010.  (Tr. 238).  On July 21, 2010, the ALJ requested the Plaintiff's medical records from CSNC dated September 25, 2009-forward.  (Tr. 392–93).  CSNC responded to the request on August 6, 2010, with records spanning from November 12, 2009 to March 18, 2010.  (Tr. 384–91).  Therefore, contrary to Plaintiff's assertion, the last date of medical evidence in the Hearing file is subsequent to January 7, 2010.  (Doc. 15, p. 15).  In fact, the ALJ cited the March 18, 2010 visit to CSNC in the decision.[2]  (Tr. 29).

Furthermore, this Court finds favor with the reasoning that "any error on the part of the ALJ [is] harmless" when a plaintiff makes no showing of prejudice.  Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001); Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").  This reasoning has been adopted in this District.  See, e.g., Hamby v. Colvin, 1:12-CV-00395-GCM, 2014 WL 1874979, at *4 (W.D.N.C. May 9, 2014) ("Plaintiff is unable to sustain her burden of establishing that such error caused her to suffer any prejudice.").

In this case, Plaintiff has not provided any additional records not already given by CNSC to the ALJ.  Plaintiff has not cited medical evidence that suggests her condition changed in any

---

[2] This also refutes Plaintiff's argument that the ALJ did not consider or evaluate evidence from CSNC.  (Doc. 15, p. 15).

significant way since the June 2009 physical examination and the 2010 CSNC visits. Although Plaintiff indicated on the Recent Medical Treatment Form that she was treated or examined by CSNC after March 26, 2010, she has not submitted evidence or argued that such a visit took place. The ALJ requested the CSNC medical records from September 25, 2009-forward, to which CSNC responded. (Tr. 392–93, 384–91). Therefore, Plaintiff has not made a showing of prejudice in this matter.

Plaintiff also assigns, as error, the ALJ's failure to order examinations after she turned eighteen years old to evaluate her limitations. (Doc. 15, p. 11). While a consultative physical or psychological evaluation was not given after Plaintiff turned eighteen years old to properly determine and assess Plaintiff's physical or psychological limitations and functional limitations, a physical examination was conducted on June 19, 2009, a date subsequent to Plaintiff's May 23, 2009 car accident. (Tr. 326–30, 314–25). The physical examination was conducted approximately ten months prior to Plaintiff's eighteenth birthday (April 23, 2010).

Plaintiff's argument is without merit for three reasons. First, the ALJ is not required to order a consultative psychological or physical examination. 20 C.F.R. § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Dr. Timothy Johnston ("Dr. Johnston") performed the physical examination of Plaintiff ten months prior to her eighteenth birthday. (Tr. 326). Further, the examination took place approximately one month after Plaintiff's car accident, which allegedly made her condition worse. (Tr. 326–30, 219).

Second, no evidence suggests that Plaintiff's condition deteriorated in any significant way since the June 2009 physical examination. (Doc. 15, p. 14-15). Plaintiff correctly

acknowledges that the ALJ is required to "make every reasonable effort to ensure that the file contains sufficient evidence to assess the RFC." (SSR 96-8p). However, sufficient evidence did exist for the ALJ to assess the RFC without ordering a second physical examination in a little over a year. None of Plaintiff's subsequent medical visits since the June 2009 physical examination, ranging from July 2009 to March 2010, indicate that Plaintiff's condition deviated substantially since the physical examination. (Tr. 370–76 (Sept. 24, 2009), 377 (Sept. 24, 2009), 384–85 (Nov. 12, 2009), 386 (Nov. 18, 2009), 387–88 (Jan. 7, 2010), 389–90 (March 18, 2010)). The examination, in combination with the on-record subsequent medical visits leading up until March 18, 2010, constitutes substantial evidence that a second physical examination was not required.

Third, the ALJ did not order a psychological examination because the ALJ found Plaintiff to be not credible regarding mental impairments based on the inconsistency between Plaintiff's testimony and the objective medical evidence. (Tr. 47). Plaintiff contends that the failure of a consultative psychological examination was a failure in developing the record. (Doc. 15, p. 11). That finding will be discussed in "Section V-A-2" of this Order concerning the ALJ's determination of Plaintiff's RFC. Again, regulations do not require an ALJ to order psychological examinations, as shown by the following:

> Some examples of when [the Social Security Administration] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

10

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a.

The record shows that (1) Dr. Johnston noted Plaintiff's mood and affect were appropriate during the June 2009 physical examination and (2) Plaintiff failed to check any of the three boxes located under "Psychological" on a Health Questionnaire such as depression, anxiety, or insomnia on September 24, 2009. (Tr. 375–76). Although the ALJ did not specifically refer to this section of the Health Questionnaire, specific references are not always required. See Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991) (noting that an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record). While Parks is not controlling authority in the Fourth Circuit, this District has agreed with such reasoning in numerous cases. See, e.g., Phillips v. Colvin, 3:13-CV-00307-MOC, 2014 WL 1713788, at *5 (W.D.N.C. Apr. 30, 2014). The June 2009 physical examination and September 2009 Health Questionnaire supports the ALJ's determination that Plaintiff did not suffer from mental impairments.

2. **The ALJ correctly assessed the Residual Functioning Capacity ("RFC") by not finding Plaintiff's severe impairments of neck pain, headaches, and mental impairments to be credible.**

i. **RFC Determination Supported by Substantial Evidence**

The ALJ found that Plaintiff has the RFC to perform sedentary work[3] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the limitations of Plaintiff being able to lift or carry

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or

five pounds frequently and a maximum of ten pounds occasionally. (Tr. 27). Moreover, based on Plaintiff's medical history, the ALJ concluded that Plaintiff must be allowed a sit and stand option since the ALJ found that Plaintiff can sit for a maximum of six hours and stand or walk for a maximum of two hours in an eight-hour workday. (Tr. 27). Substantial evidence supports both the RFC assessment, and with it, the finding of Plaintiff's statements about neck pain, headaches, and mental impairments to be not credible to the extent that it is inconsistent with the objective medical evidence.

A repetitive criticism of the ALJ's decision by Plaintiff is that the ALJ did not have medical records of Plaintiff after she reached eighteen years old. (Doc. 15, p. 10-11, 14-15). While it is true that the ALJ erroneously noted that medical opinions rendered after Plaintiff turned eighteen years old were in the record (Tr. 48) (citing Tr. 243, 244, 326-29, 378–83), this is harmless error in the Camp construct. Plaintiff makes no showing of prejudice by the ALJ not having evidence in the record after Plaintiff reached eighteen years old. See Camp, 2001 WL 1658913, at *1. Only one hundred and thirty days separated Plaintiff's eighteenth birthday and the Hearing. Plaintiff does not argue that her condition changed in any significant way during this time period or between the March 18, 2010 CSNC visit and Plaintiff's eighteenth birthday. Therefore, any error committed by the ALJ was harmless.

Plaintiff's argument that the ALJ's RFC determination is in error is without merit. Specifically, Plaintiff asserts error from the ALJ for not finding credible her claims of neck pain, headaches, and mental impairments. Each claim was decided with substantial evidence and

---

carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

followed appropriate legal standards as the following discussion will show.  See Richardson, 402 U.S. at 390; Hays, 907 F.2d at 1456.

### i.      Evaluating Subjective Complaints

To determine the credibility of subjective complaints, the ALJ is to follow the two-step process laid out in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and the identical rulings and regulations.  See 20 C.F.R. § 404.1529; SSR 96-7p.[4]

In the first step, the ALJ is to determine whether there is objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*."  Craig, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b) and 404.1529(b)) (emphasis added).

If such an impairment is found at the first step, the second step calls for the ALJ to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work . . . ."  Id. at 595.  Regulations, 20 C.F.R. §§ 416.929(c)(1) and 404.1529(c)(1), require an ALJ to consider all of the available evidence including a claimant's own statements about the pain.  Other relevant evidence that shows the severity of the impairment is also considered, such as the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.  Craig, 76 F.3d at 595 (noting the different considerations taken into account by the regulations of 20 C.F.R. §§ 416.929(c)(3) and

_____

[4] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 C.F.R. § 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects;  to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms;  and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  SSR 96-7p (statement of purpose).

404.1529(c)(3)).  Indeed, the Fourth Circuit notes that regulations do not require an ALJ to accept as true all of a claimant's allegations.  Id.

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .

Id. (summarizing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4)).

The ALJ properly followed the Craig two-step process.  (Tr. 27-30).  The second step is the point of contention wherein Plaintiff claims error from the ALJ:  the finding that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms are not credible to the extent that they are inconsistent with the RFC assessment.  (Tr. 28).  The ALJ correctly stated the procedure by noting, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record."  (Tr. 27).  This shows that the ALJ understood the two-step process.

Plaintiff argues that she was entitled to rely exclusively on subjective medical evidence during the second step of Craig.  (Doc. 15, p. 15).  Plaintiff is entitled to such reliance as set out in Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006), however, this reliance is not without limits.  See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . .").  The ALJ discredited Plaintiff's statements because of their inconsistency with the objective evidence.  (Tr. 28).  The ALJ did not discredit

14

the statements due to the statements being without objective evidence.  (Tr. 28).  Plaintiff's assignments of error to the ALJ concerning Plaintiff's credibility of subjective complaints of neck pain, headaches, and mental impairments will be discussed in that order.

### ii.    Subjective Complaint of Neck Pain

Plaintiff's statements regarding the intensity, persistence, and limiting effects of her neck pain were found not credible.  (Tr. 28).  The level of review from this Court is simply whether or not substantial evidence supports that determination.  42 U.S.C. § 405(g).  Substantial evidence, as defined by the Fourth Circuit, supports this finding of Plaintiff not being credible. See Smith, 782 F.2d at 1179 (noting substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").  The ALJ discussed Plaintiff's Form 3820 Disability Report, in which Plaintiff indicated that she was able to dance, swim, drive a car, throw a ball, and work video game controls.  (Tr. 28) (citing Tr. 205). Moreover, the ALJ cited a medical record from a 2008 visit with Dr. Sukhbir Guram ("Dr. Guram") that showed Plaintiff involved in cheerleading.  (Tr. 28) (citing Tr. 308).

The ALJ noted four points in the record after the May 2009 car accident:  (1) a record from Murphy Medical Center, on the day of the accident, showed Plaintiff's neck was non-tender, had painless range of motion, and trachea was midline (Tr. 29) (citing Tr. 315);  (2) a record from CSNC showed that Dr. Mark Moody ("Dr. Moody") diagnosed Plaintiff with resolving cervical sprain or strain (Tr. 29) (citing Tr. 387);  (3) a record from CSNC on March 18, 2010, showed Dr. Moody's physical examination of Plaintiff resulted in Dr. Moody concluding that "[Plaintiff] has normal strength and sensation in all motor groups and dermatomes of the upper extremities" (Tr. 29) (citing Tr. 389);   and (4) a record of Dr. Johnston's musculoskeletal examination of Plaintiff on June 19, 2009, in which Dr. Johnston

found that while Plaintiff had limitations with the normal excursion of the thoracic spine, Plaintiff also had "normal range of motion to side bending, flexion, and rotation of the cervical spine in all planes." (Tr. 29) (citing Tr. 328). This is substantial evidence to support the ALJ's determination that Plaintiff's testimony concerning neck pain was not credible.

### iii.  Subjective Complaint of Headaches

Plaintiff's statements regarding the intensity, persistence, and limiting effects of her headaches were found not credible. (Tr. 28). Substantial evidence supports the ALJ's determination, with references to the record before and after the May 2009 car accident that show an inconsistency with the objective medical evidence and Plaintiff's statements. The following four citations to the record by the ALJ satisfies substantial evidence: (1) a record from Dr. Guram on July 29, 2008, showing that Plaintiff's headaches had resolved since the earlier complaints of intermittent headaches (Tr. 28) (citing 308); (2) a record from Dr. Johnston's June 2009 physical examination showing that Plaintiff denied having problems with headaches (Tr. 29) (citing 327); (3) an initial Physical Therapy Evaluation form from November 18, 2009, showing no complaint of headaches from Plaintiff (Tr. 29) (citing Tr. 386); and (4) a record from Dr. Moody on January 7, 2010, showing that Plaintiff took pain medication on an infrequent basis and Plaintiff's problems section did not have headaches listed. (Tr. 29) (citing Tr. 387).

### iv.  Subjective Complaint of Mental Impairments

Plaintiff's testimony regarding the intensity, persistence, and limiting effects of depression and anxiety were found not credible. (Tr. 28). Plaintiff's updated Disability Report

Form 3441, the exact date of which is uncertain[5], alleged that Plaintiff had "a great deal of anxiety now" after not reporting such a condition on October 14, 2009. (Tr. 229). This condition allegedly started in February of 2010. (Tr. 229). The ALJ cites the June 2009 physical examination in which Dr. Johnston noted that Plaintiff's general appearance, mood, and affect were appropriate and that Plaintiff was very cooperative and pleasant. (Tr. 29) (citing Tr. 327). This is substantial evidence to support the discrediting of Plaintiff's statements.

Plaintiff asserts that depression is also a cause of Plaintiff not caring for her personal needs. (Tr. 232). Although the ALJ does not discuss depression in the CDB Application Decision, this is harmless error since the ALJ evaluated the mental impairment in the DIB Application Decision. (Tr. 47) (citing Tr. 232). In this decision, the ALJ found Plaintiff's testimony concerning depression to be not credible. (Tr. 47). The ALJ references the January 25, 2010 Childhood Disability Evaluation Form from Dr. Val Sokolev ("Dr. Sokolev") that found no limitation in the domain of "Caring for Yourself."[6] (Tr. 47) (citing Tr. 381). Dr. Sokolev completed the Childhood Disability Evaluation Form on January 25, 2010. (Tr. 378–83). The starting date of Plaintiff's alleged depression is unknown from the record. With this information not being known, Dr. Sokolev's finding from January 25, 2010, combined with Dr. Johnston's consultative examination, is substantial evidence that supports the ALJ's determination.

As discussed prior, Plaintiff must show how Plaintiff was prejudiced by an alleged error from the ALJ. See Camp, 2001 WL 1658913, at *1 (noting that the plaintiff made no showing of

---

[5] The updated Disability Report Form 3441 appears to have been completed by Plaintiff between the dates of February 1, 2010, and March 18, 2010. (Tr. 229–30).

[6] This particular domain considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment . . . ." 20 C.F.R. § 416.926a(k).

prejudice and thus "any error on the part of the ALJ was harmless."); <u>Shinseki</u>, 556 U.S. at 409 (". . . the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").  In this case, the record is without evidence that suggests Plaintiff has any mental impairment, that medication was used to treat such a condition, or that mental health treatment was sought.  (Tr. 193–95, 219–21, 229–31, 239).  The burden of producing evidence to demonstrate the severity of a condition belongs to Plaintiff. <u>See</u> SSR 85-28, 1985 WL 56856, at *3. This claim of error must fail.

Further, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. <u>Parks</u>, 766 F. Supp. at 635.  The ALJ considered the entire record when making the decision concerning credibility regarding depression and anxiety in the DIB decision.  (Tr. 41).  The record includes a CSNC Health Questionnaire filled out by Plaintiff on September 24, 2009, which does not contain check marks in the boxes regarding depression and anxiety.  (Tr. 376).  Further, a March 18, 2010 record of Plaintiff's visit to CSNC is without any indication of complaints regarding anxiety or depression by Plaintiff, or any commentary from Dr. Moody concerning such issues.  (Tr. 389–90).  Substantial evidence supports the ALJ's determination that Plaintiff's testimony concerning mental impairments was not credible.

### v.      Subjective Complaints Inconsistent with Daily Activities

Regulations also provide for a claimant's daily activities to be considered in the ALJ's evaluation of credibility.  <u>See</u> 20 C.F.R. §§ 416.929(c)(3) and 416.929(c)(3)(i) (evaluating a claimant's symptoms takes into account medications, treatments or other methods used to alleviate symptoms, how the symptoms may affect the pattern of daily living, and daily activities among other indicators); SSR 96-7p ("[t]he individual's daily activities" are considered as

factors when assessing the credibility of statements about symptoms and their effects). The ALJ's discussion of Plaintiff's daily activities serves as substantial evidence to support the determination.

The ALJ cited the record on many occasions to show an inconsistency between Plaintiff's daily activities and the subjective complaints of neck pain, headaches, and mental impairments. First, the ALJ referenced an undated Child Function Report in which Plaintiff admitted being able to dance, swim, drive a car, throw a ball, and work video game controls. (Tr. 28) (citing Tr. 205). Second, the ALJ cited the July 2008 visit with Dr. Guram's release of Plaintiff to continue cheerleading. (Tr. 28) (citing Tr. 308). Third, the ALJ cited Dr. Justin Field's October 25, 2004 report that "[Plaintiff] is quite active and has no limitations at this point except for contact sports." (Tr. 29) (citing and quoting Tr. 312). These references constitute substantial evidence to show an inconsistency with Plaintiff's testimony that the symptoms and pain are not as persistent and intense as claimed.

### 3. The ALJ gave enough weight to the opinion of Plaintiff's mother concerning Plaintiff's condition.

An ALJ discrediting lay witness testimony from family members of a plaintiff when the testimony is largely corroborative of a plaintiff's own testimony has found support in this District. See Grubby v. Astrue, 1:09CV364, 2010 WL 5553677, at *7 (W.D.N.C. Nov. 18, 2010) (finding persuasive and adopting the reasoning of Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) that an ALJ's failure to give specific reasons for disregarding the testimony of the plaintiff's husband was inconsequential when the same evidence used to discredit the plaintiff's testimony also supports discrediting the testimony of the plaintiff's husband) report and

recommendation adopted, 1:09CV364, 2011 WL 52865, at *1 (W.D.N.C. Jan. 7, 2011).  This Court finds such reasoning from the Eighth Circuit to be persuasive.

The testimony of Plaintiff's mother in this case is lay witness opinion that "does little more than corroborate a plaintiff's own testimony."  See Grubby, 2010 WL 5553677, at *7.  While no particular testimony from Plaintiff's mother is cited in Argument (Doc. 13, p. 15-16), the only relevant portion is when Plaintiff's mother responds to the ALJ's question of whether Plaintiff has the RFC to do a job, "I don't think so.  She, the way she is at home with pain and she has these migraines now two or three times a week and she ends up in the bed with them.  And it's just a lot of pain going on with her."  (Tr. 77).  This testimony only corroborates what Plaintiff said earlier during the Hearing when Plaintiff testified that she would "just go lay down till it goes away."  (Tr. 66).  The same objective medical evidence, discussed in the preceding sections, the ALJ found to be inconsistent with Plaintiff's testimony is the same evidence used to discredit the testimony of Plaintiff's mother.   Substantial evidence supports the ALJ's determination of credibility here.

## VI.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's Motion and Brief, the Commissioner's Responsive Pleading, and Plaintiff's assignments of error.  Review of the entire record reveals that the ALJ Decision is supported by substantial evidence.  See Richardson, 402 U.S. at 390; Hays, 907 F.2d at 1456.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,"  Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### VII. Order

**IT IS, THEREFORE, ORDERED** that the Commissioner's Motion for Summary Judgment is **GRANTED** and the decision of the Commissioner **AFFIRMED.** **IT IS FURTHER ORDERED that** the Plaintiff's Motion for Summary Judgment is **DENIED**.

Signed: September 18, 2014

Richard L. Voorhees
United States District Judge